IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CLIFFORD NELSON, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   CIVIL ACTION 19-01005-WS-B |
| | ) |
| NATIONSTAR MORTGAGE, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter comes before the Court on defendant Nationstar Mortgage LLC's Motion for Summary Judgment (doc. 56) and defendant Federal National Mortgage Association's Motion for Summary Judgment (doc. 59). Both Motions have been briefed and are now ripe.

**I.      Relevant Background.**[1]

Plaintiffs, Clifford Nelson and Susan Nelson, brought this action against defendants, Nationstar Mortgage LLC and Federal National Mortgage Association, based on allegations of mismanagement of plaintiffs' mortgage loan. Although the Nelsons allege an array of statutory and common-law causes of action against defendants, the central allegations animating the Amended Complaint are that Nationstar, as servicer of the Nelsons' mortgage loan and on behalf

---

[1]      The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Smith v. LePage*, 834 F.3d 1285, 1296 (11th Cir. 2016) ("It is not this Court's function to weigh the facts and decide the truth of the matter at summary judgment …. Instead, where there are varying accounts of what happened, the proper standard requires us to adopt the account most favorable to the non-movants.") (citations and internal quotation marks omitted). Accordingly, the record will be viewed in the light most favorable to plaintiffs, with all justifiable inferences drawn in their favor. Also, federal courts cannot weigh credibility at the summary judgment stage. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices."). Therefore, the Court will "make no credibility determinations or choose between conflicting testimony, but instead accept[s] Plaintiff[s'] version of the facts drawing all justifiable inferences in [their] favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

of Fannie Mae as lender, twice failed and/or refused to credit loan payoff amounts properly tendered by the Nelsons, larded the loan balance with unwarranted additional fees and charges, falsely reported the loan as delinquent to major credit bureaus, and wrongfully initiated foreclosure proceedings against the Nelsons' home.

Most of the facts upon which defendants' Rule 56 Motions rest are undisputed, although plaintiffs insist on multiple occasions in their briefing that further discovery is necessary to develop a more comprehensive record of the pertinent facts bearing on plaintiffs' claims as to which defendants seek summary judgment.[2]  The basic facts, viewed in the light most favorable to plaintiffs, are as follows: On January 27, 2012, nonparty Citibank, N.A., loaned the Nelsons the sum of $78,213.00 for the purchase of their primary residence on Pine Needle Drive in Mobile, Alabama.  (Doc. 56-1, Exh. A.)  The loan was secured by a mortgage on the property, with the Nelsons as mortgagors and nonparty Mortgage Electronic Registration Systems, Inc. listed as mortgagee as a nominee for Citibank and its successors and assigns.  (Doc. 56-1, Exh. B, PageID.408.)  On April 12, 2017, Nationstar sent the Nelsons a letter notifying them that "[a]s of 04/01/17, CITIMORTGAGE, INC has transferred the servicing of your mortgage loan to Nationstar Mortgage."  (Doc. 56-1, Exh. C, PageID.425.)  According to Nationstar's records, Fannie Mae was the loan investor and owner of the promissory note during all times relevant to this dispute.  (Doc. 56-1, PageID.396, ¶ 9.)[3]

In April 2019, the Nelsons decided to utilize savings to pay off their mortgage loan balance in its entirety.  They requested and obtained a Mortgage Payoff Statement reflecting that

---

[2]     Under Rule 56(d), a federal district court may defer or deny consideration of a summary judgment motion, or enter any other appropriate orders, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  Rule 56(d), Fed.R.Civ.P.  Defendants filed their summary judgment motions in this case several months before the close of discovery, and at various points in their brief, the Nelsons contend that they are unable to respond adequately to defendants' arguments without a more fully developed factual record.  In each instance, defendants counter that the additional facts are unnecessary to resolution of the legal issues presented on summary judgment.  This Order will resolve these disputes by taking up the application of Rule 56(d) on an issue-by-issue basis, as appropriate.

[3]     Plaintiff Clifford Nelson acknowledges this arrangement in his Declaration, where he states, "As of April 2019, that loan was serviced by Nationstar, doing business as Mr. Cooper. Nationstar is servicing the loan on behalf of Federal National Mortgage Association ('Fannie Mae'), which is the owner of the loan and the true creditor."  (Doc. 75-2, PageID.930, ¶ 2.)

the total amount needed to satisfy the loan in full was $37,194.66 and providing a May 13, 2019 "good through" date.  (Doc. 56-1, Exh. D, PageID.432.)  On or about April 26, 2019, Nationstar received a cashier's check from the Nelsons dated April 24, 2019, in the amount of $37,194.66, the exact figure that Nationstar had quoted them to pay off the loan in full.  (Doc. 56-1, Exh. E, PageID.435.)  Because of an internal error, Nationstar returned the cashier's check, unnegotiated, to the Nelsons on May 2, 2019, incorrectly explaining that Nationstar had been unable to process the payment because "Other: Loan paid off."  (Doc. 56-1, Exh. G, PageID.440.)  In other words, Nationstar mistakenly believed the Nelsons' loan had already been paid off, so it returned to the Nelsons the very cashier's check that the Nelsons had submitted to pay off such loan.  To compound the confusion, Nationstar's internal records documented the loan as having been paid, which of course it had not.

For the next few months, nothing happened.  No more payments were submitted by the Nelsons or received by Nationstar.  No billing statements were sent by Nationstar or requested by the Nelsons.  The summary judgment record does not reflect that the Nelsons ever reached out to Nationstar to resolve what they knew to be an obvious misunderstanding about the status of their loan, or that Nationstar contacted the Nelsons with instructions as to how to proceed. Rather, the record shows that the next communication between the parties took the form of a letter from Nationstar to the Nelsons dated September 16, 2019, nearly five months after the failed payoff snafu.  In that letter, Nationstar wrote, "Your loan is currently past due for the 05/01/2019 payment and is due for all payments from and including that date.  The failure to make these payments is a default under the terms and conditions of the mortgage loan."  (Doc. 56-1, Exh. I, PageID.444.)  Nationstar demanded that the Nelsons pay the sum of $4,413.81 by October 21, 2019 to cure the default, and indicated that failure to do so may result in acceleration of the loan and initiation of foreclosure proceedings.

On October 1, 2019, the Nelsons sent a letter to Nationstar that they designated as a "Qualified Request and Notice of Servicing Error."  (Doc. 56-1, Exh. J.)  In the October 1 letter, the Nelsons emphasized the glaring mistake that Nationstar had made in processing their pay-off funds back in April 2019.  They further indicated that "[w]e have not received monthly statements from you since May 2019" and that "[w]e are ready to re-send the original pay-off funds to you immediately," provided that Nationstar would furnish them "written confirmation … that no further funds are required."  (*Id.*, PageID.448.)  On October 15, 2019, Nationstar

responded in writing with a letter setting furth results of its internal investigation.  In the October 15 letter, Nationstar indicated that "[w]e discovered an error originated with our cash team" as to the Nelsons' attempted April 2019 loan payoff, acknowledged that "monthly billing statements were not being generated," and observed that "the account is approximately six (6) payments delinquent." (Doc. 56-1, Exh. K, PageID.460.)  Nationstar continued, "This letter notifies you failure to cure the loan by October 21, 2019, may result in foreclosure proceedings and sale of the property." (*Id.*, PageID.461.)  In the very next paragraph, however, Nationstar stated that it was providing the Nelsons with a new payoff quote for $37,925.36 "good through November 6, 2019." (*Id.*)[4]  The Nelsons did not cure the loan by the October 21, 2019 deadline for potential foreclosure proceedings to commence.  However, on October 24, 2019, the Nelsons responded with a letter to Nationstar enclosing a cashier's check in the amount of $37,925.36, but reflecting that "we are paying this amount **UNDER PROTEST** and reserve the right to take action against you for requesting funds in addition to the original payoff amount." (Doc. 56-1, Exh. L, PageID.477.)[5]

One might reasonably expect the Nelsons' October 24 letter and remittance of the full amount of the new payoff quote to resolve the matter, save perhaps for lingering discussions concerning the $730.70 differential between the April 2019 payoff quote ($37,194.66) and the October 2019 payoff quote ($37,925.36).  Unfortunately, it did not.  On November 4, 2019, Nationstar sent another letter to the Nelsons stating that while it had received the $37,925.36 cashier's check, "these funds are unapplied and are in a suspense account as they are not sufficient to pay the loan off." (Doc. 56-1, Exh. M, PageID.490.)  The November 4 letter went on to explain for the first time that an additional $3,165.91 was necessary to pay the loan in full,

---

[4]      In briefing its summary judgment motion, Nationstar ascribes significance to the following language from the "Frequently Asked Questions" section of the new payoff quote: "This payoff quote is good through the date listed on the front page.  However, if you are in default and a foreclosure sale is scheduled prior to the expiration of the good through date, you MUST contact us prior to the foreclosure sale for an updated and accurate payoff amount. Payoff funds should be overnighted and received by us at least 24 hours prior to the sale date to ensure that the foreclosure is canceled." (Doc. 56-1, Exh. K, PageID.463.)

[5]      Plaintiffs' position is that this October 24 letter also qualified as a separate Notice of Servicing Error within the meaning of RESPA and its implementing regulations.  Thus, in plaintiffs' view, they actually sent two Notices of Servicing Error to Nationstar, with the first being the October 1 letter.

"due to associated fees you have been charged relating to a home loan in default or foreclosure, which can include attorney fees, filing fees, and inspection fees." (*Id.*) The November 4 letter also notified the Nelsons for the first time that Nationstar had referred their property to foreclosure on October 23, 2019 (two days after the cure deadline specified in the October 15 letter) and that "collection activity including foreclosure proceedings may continue at any time." (*Id.*, PageID.491.) Nationstar concluded the November 4 letter by stating that, upon the conclusion of its investigation, "we determined that overall, there were no errors on our part." (*Id.*) Then on November 14, 2019, Nationstar's foreclosure counsel sent the Nelsons a letter notifying them that the loan had been accelerated, that the total amount due was $37,987.51 (a mere $62.15 more than the $37,925.36 that the Nelsons had remitted to Nationstar less than three weeks earlier but which Nationstar had refused to apply to the loan balance), that counsel were commencing foreclosure under the terms of the Mortgage, and that the foreclosure sale was scheduled for December 20, 2019. (Doc. 75-3, PageID.936.)[6] Six days after that letter, on November 20, 2019, the Nelsons commenced this litigation by filing their Complaint against Nationstar and Fannie Mae. (Doc. 1.)[7]

Even after this action commenced, Nationstar moved forward with foreclosure proceedings as to the Nelsons' residence. The foreclosure sale was advertised in *The Call News* on three occasions in November and December 2019, with a published foreclosure sale date of December 20, 2019. (Doc. 56-1, Exh. O, PageID.511.) On December 11, 2019, Nationstar's foreclosure counsel notified the Nelsons' counsel that the foreclosure sale had been canceled at Nationstar's instruction. (Doc. 56-2, PageID.552.) Ultimately, in February 2020, Nationstar agreed to accept the Nelsons' payment of $37,194.66 in full satisfaction of the loan, in accordance with the April 2019 loan payoff statement, and to refund the difference of $730.70 from the Nelsons' October 2019 cashier's check. (Doc. 56-1, Exhs. Q, R.) On February 25,

---

[6]     Also on November 14, 2019, Nationstar's foreclosure counsel notified the Nelsons' homeowners association in writing that "[w]e are in the process of conducting a foreclosure" on the Nelsons' home. (Doc. 75-4, PageID.941.)

[7]     During this time, Nationstar reported to the credit bureaus that the Nelsons had defaulted on the mortgage loan, leading to a more than 150-point drop in Mr. Nelson's FICO score from 856 to 702. (Doc. 56-3, PageID.560, at #2.) There is no record evidence as to the impact, if any, on Ms. Nelson's FICO score.

2020, Nationstar sent a Release of Mortgage to the Mobile County Probate Court reflecting that the Nelsons' mortgage loan "is now Paid and Satisfied, and is therefore discharged." (Doc. 56-1, Exh. S, PageID.527-28.) Thus, the Nelsons' account has been paid in full, and Nationstar acknowledges that no further amounts are owed on the loan. (Doc. 56-1, PageID.401, ¶ 30.) And on April 2, 2020, Nationstar completed a suppression of all prior negative credit reporting on the Nelsons' account. (*Id.*, ¶ 29.)

Notwithstanding these developments, the Nelsons continue to pursue a host of statutory and common-law causes of action against both Nationstar and Fannie Mae today. In particular, the Amended Complaint sets forth the Nelsons' claims for breach of the mortgage agreement and note by both defendants (Count I), RESPA violations by Nationstar (Count II), FCRA violations by Nationstar (Count III), wantonness by both defendants (Count IV), violations of the Alabama Deceptive Trade Practices Act by Nationstar (Count V), defamation by both defendants (Count VI), and conversion by both defendants (Count VII). Plaintiffs have identified their compensatory damages as including (i) "economic damages, including the extra money we sent to satisfy the loan and expenses related to the correspondence sent to Nationstar;" (ii) "damages from the emotional distress, mental anguish, worry, stress, frustration and embarrassment caused by Defendants' actions;" (iii) reputational injury in that "their reputations were damaged by the repeated publishing in the newspaper … of a false statement that they had failed to make the required mortgage and note;" and (iv) diminution of "[t]heir reputations and creditworthiness … as a direct result of Nationstar's wrongful and false credit reporting." (Doc. 56-3, PageID.564, at #6.) Both defendants now move for summary judgment on all claims and causes of action joined in these proceedings.

## II.    Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden

of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11ᵗʰ Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11ᵗʰ Cir. 1987) (citation omitted).

## III.   Analysis of Nationstar's Rule 56 Motion.

### A.   *Breach of Mortgage Agreement and Note (Count I).*

In Count I of the Amended Complaint, the Nelsons assert a breach of contract claim against Nationstar. Plaintiffs' theory is that Nationstar breached the mortgage and note through its "failure to apply funds tendered by Plaintiffs, and the institution of foreclosure proceedings and acceleration of the loan contrary to the provisions of the mortgage and note." (Doc. 18, PageID.210, ¶ 48.)

Nationstar moves for summary judgment on Count I on the ground that it is neither a party to nor an assignee of the mortgage or note. Of course, it is axiomatic that a breach of contract claim requires that there be a valid contract binding the parties. *See, e.g., Dupree v. PeoplesSouth Bank*, --- So.3d ----, 2020 WL 2297145, *3 (Ala. May 8, 2020) ("The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties …."). The record is clear that the promissory note was executed by the Nelsons in favor of Citibank, N.A., as lender, and that the named mortgagee in the mortgage is Mortgage Electronic Registration Systems, Inc., as a nominee for Citibank. Nationstar's correspondence and notices to the Nelsons in April 2017 reflected only that Citibank had transferred the servicing of the loan (as opposed to ownership of the loan) to Nationstar. A breach of contract claim is generally not cognizable against a mere servicer, which is not in contractual privity with the borrower. *See, e.g., Jackson v. Bank of New York Mellon*, 2016 WL 4942085, *8 (S.D. Ala. July 19, 2016) ("Because they are not a party to the Mortgage, the breach of contract claim against SLS fails as a matter of law.").

In response, plaintiffs question whether Nationstar was just a servicer of the loan, or whether the note or mortgage may have been assigned to it. To that end, plaintiffs observe that the November 14 letter from Nationstar's counsel accelerating the loan indicated "Creditor to Whom the Debt is Owed: Nationstar Mortgage LLC d/b/a Mr. Cooper." (Doc. 75-3, PageID.936.) Similarly, the accompanying notice of foreclosure sale identifies Nationstar "as Mortgagee/Transferee." (*Id.*, PageID.938.) On that basis, plaintiffs state that they require additional discovery to confirm whether an assignment or transfer from Fannie Mae to Nationstar might have been made at some point, in which case Nationstar would be more than a mere servicer of the loan and would have the potential for contractual liability as a party or assignee of the mortgage or note.

The trouble with plaintiffs' argument is that they have already conclusively committed themselves to the position that Nationstar was the servicer and Fannie Mae was the owner of the loan at all relevant times. For example, in their Amended Complaint, plaintiffs affirmatively allege as follows: "At all relevant times Nationstar serviced the loan on behalf of Federal National Mortgage Association ('Fannie Mae'), which is the owner of the loan and the true creditor." (Doc. 18, PageID.200, ¶ 9.) Likewise, in his Declaration, Clifford Nelson made the statement that "Nationstar is servicing the loan on behalf of … [Fannie Mae], which is the owner of the loan and the true creditor." (Doc. 75-2, PageID.930, ¶ 2.) Plaintiffs cannot have it both ways. They cannot affirmatively represent in their pleadings and evidentiary submission that Fannie Mae is the "true creditor," then in the next breath say that their breach of contract claim against Nationstar should persist because maybe Nationstar (not Fannie Mae) was the "true creditor," despite the absence of any documentation other than a couple of stray references in the foreclosure documents prepared by outside counsel to suggest even the slightest possibility that Nationstar was the owner of the loan. Moreover, the summary judgment standard does not enable nonmovants to evade their own version of the facts. *See Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) ("Our duty to read the record in the nonmovant's favor stops short of not crediting the nonmovant's testimony in whole or part: the courts owe a nonmovant no duty to disbelieve his sworn testimony which he chooses to submit for use in the case to be decided.").

For these reasons, Nationstar's Motion for Summary Judgment is **granted** as to Count I on the ground that was no contractual relationship between the Nelsons and Nationstar, whose role was that of a mere servicer of the loan.

B.       *RESPA Violations (Count II).*

In Count II of the Amended Complaint, the Nelsons assert a claim against Nationstar for violating the requirements of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e) ("RESPA"), with respect to plaintiffs' Notices of Servicing Errors ("NOEs") dated October 1, 2019 and October 24, 2019.  In particular, plaintiffs allege that Nationstar violated RESPA by (i) failing to make appropriate corrections resulting from its servicing errors, (ii) failing to take timely action to respond to plaintiffs' NOEs, (iii) failing to comply with Regulation X requirements for responding to NOEs, and (iv) continuing to report derogatory information upon receipt of the NOEs.  (Doc. 18, PageID.212, ¶ 59.)  Plaintiffs plead that Nationstar has engaged in a pattern and practice of RESPA violations that entitles the Nelsons to recover statutory damages, and plaintiffs further plead that they have suffered actual damages.  (*Id.*, ¶¶ 60-61.)

As an initial matter, Nationstar quarrels with the notion that the October 24, 2019 letter constitutes a NOE for purposes of RESPA.  The applicable regulation provides that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."  12 C.F.R. § 1024.35(a).  The Nelsons' October 24 letter was essentially a cover letter accompanying their cashier's check in the full payoff amount; however, the Nelsons also enclosed "a copy of our October 1, 2019 letter which provides the details of our dispute."  (Doc. 56-1, Exh. L.)  In effect, the Nelsons were reiterating their dispute, dissatisfactions, and alleged errors they had previously pointed out in their October 1 letter.  Taken as a whole, then, the October 24 letter appears to satisfy all the requirements for a NOE under § 1024.35(a).  That said, the October 24 letter was largely duplicative of the October 1 NOE; therefore, Nationstar was exempted from the requirements of RESPA as to the October 24 letter by the plain language of § 1024.35(g)(1)(i).  That subsection provides that a servicer need not comply "if the servicer reasonably determines that … [t]he asserted error is substantially the same as an error previously asserted by the borrower for which the servicer has previously complied with its obligation to respond …, unless the borrower provides new and material information to support the asserted error."  12 C.F.R. 1024.35(g)(1)(i).  Nationstar made just such a determination as to the October 24 letter, which it communicated to the Nelsons via the November 4 letter as follows:

"Under the Real Estate Settlement Procedures Act (RESPA) and Regulation X, Mr. Cooper is not required to respond to requests for information that are duplicative and substantially the same as previous requests. After reviewing your correspondence, we found that we previously complied with our obligation to respond to your letter dated October 1, 2019, on October 15, 2019. … Unless there is new and material information that has not been provided to Mr. Cooper for investigation, Mr. Cooper considers this matter resolved."

(Doc. 56-1, Exh. M, PageID.490.)  These determinations by Nationstar were reasonable and fully compliant with the regulation; therefore, no RESPA violation arises from defendant's response or lack of response to the October 24 letter.[8]  Plaintiffs' RESPA claims in Count II hinge exclusively on the October 1 letter and Nationstar's response to same on October 15.

Next, Nationstar posits that Count II should be dismissed for lack of damages.  It is well-settled that "[d]amages are 'an essential element' of a RESPA claim." *Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1011 (11th Cir. 2016).  In general, a plaintiff must make a showing of "actual damages the borrower sustained as a result of the RESPA violation." *Id.*; *see also* 12 U.S.C. § 2605(f)(1)(A) (violator of RESPA is liable to borrower in the amount of "any actual damages to the borrower as a result of the failure").  "Thus, to prevail on a RESPA claim, a plaintiff must show (1) a failure to comply with a RESPA obligation and (2) actual damages sustained as a result of the failure to comply." *Baez v. Specialized Loan Servicing, LLC*, 709 Fed.Appx. 979, 982 (11th Cir. Sept. 22, 2017); *see also Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp.2d 1273, 1294 (N.D. Ala. 2013) ("Plaintiffs' RESPA claim fails as a matter of law for the additional reasons that Plaintiffs have failed to present evidence that they suffered any actual

---

[8]      In arguing the point, plaintiffs insist that the October 24 letter "cannot be regarded as merely duplicative of the earlier NOE" because, in the interim, Nationstar had increased the payoff amount by $730.70, which the October 24 letter reflected the Nelsons were paying "UNDER PROTEST."  (Doc. 56-1, Exh. L.)  But the October 24 letter specifically included a statement from the Nelsons that they were enclosing a copy of the October 1 letter "which provides the details of our dispute."  (*Id.*)  Thus, the October 24 letter can reasonably be read as a whole as stating that the Nelsons' "dispute" with Nationstar was that detailed in the October 1 letter, not anything new or different.  Under the circumstances, it was reasonable for Nationstar to view the October 24 letter as "substantially the same" as the previous NOE; after all, the October 24 letter specifically referenced the earlier NOE as setting forth "the details of our dispute."  And the additional fees / interest included in the new payoff amount referenced in the October 24 letter flowed directly and inexorably from the dispute described in the October 1 letter.  This was neither a new dispute nor a different issue.  It was part and parcel of the same.  Thus, Nationstar did not violate RESPA by virtue of any noncompliance with the § 1035(d), (e) and (i) requirements as to the October 24 letter.

damages as a result of the alleged RESPA violation.")  Plaintiffs have pleaded and submitted record evidence of emotional distress, which the parties agree may qualify as "actual damages" for RESPA purposes.  *See, e.g., Ranger v. Wells Fargo Bank N.A.*, 757 Fed.Appx. 896, 902 (11th Cir. Dec. 11, 2018) ("Construing RESPA's unqualified language of 'actual damages' broadly, and based on the interpretations of 'actual damages' in other consumer-protection statutes that are remedial in nature, we see no reason why a plaintiff cannot recover non-pecuniary damages, such as emotional distress, under RESPA."); *McLean v. GMAC Mortg. Corp.*, 398 Fed.Appx. 467, 471 (11th Cir. Sept. 30, 2010) ("plaintiffs arguably may recover for non-pecuniary damages, such as emotional distress and pain and suffering, under RESPA").

Nonetheless, Nationstar maintains that it is entitled to summary judgment on Count II because of a lack of a causal link between the alleged violation and the Nelsons' damages.  To be sure, "RESPA states that actual damages arise 'as a result of' the servicer's alleged violation.  12 U.S.C. § 2605(f)(1)(A).  This language suggests there must be a 'causal link' between the alleged violation and the damages."  *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016).  But the Nelsons' facts, if credited by the jury at trial, would support the existence of such a causal link.  In particular, the Nelsons' discovery responses reflect that "Nationstar's failure to apply the funds we sent to pay off this loan, its collection letters and foreclosure threats, its decision to sell our home six days before Christmas and its decision to publish foreclosure notices in the newspaper, while at the same time hold the money we sent to pay off the loan, has caused extreme worry, stress, distress, frustration, embarrassment and loss of sleep. … Nationstar's actions turned what should have been a joyous occasion into a nightmare …."  (Doc. 56-3, PageID.568, at #18.)  Defendant contends that the Nelsons sustained no emotional distress damages "as a result of their October 1, 2019 letter."  (Doc. 79, PageID.1003.)  Plaintiffs' rejoinder is that if Nationstar had taken appropriate corrective measures in response to their NOE letter of October 1 (*i.e.*, if Nationstar had complied with its RESPA obligations), then none of those events causing them emotional distress would have happened.  The Eleventh Circuit has recognized such a theory as being sufficient to establish the requisite causal link under RESPA.  *See Ranger*, 757 Fed.Appx. at 902 (finding adequate allegations of a causal link for RESPA purposes where "the thrust of Plaintiffs' allegations is that all of their emotional distress could have been avoided had Wells Fargo heeded their requests to correct the alleged error that they had failed to pay their mortgage").  The Court finds sufficient

record evidence to create a genuine issue of material fact as to the causal link element of Count II, such that Nationstar is not entitled to summary judgment on that claim.[9]

### C.    *FCRA Violations (Count III).*

Count III of the Amended Complaint alleges that Nationstar violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("FCRA"). This cause of action arises from Nationstar's furnishing of credit information about the Nelsons' loan to consumer credit reporting agencies after April 26, 2019, and plaintiffs' ensuing "consumer dispute" about the veracity of that information. Specifically, the FCRA claim hinges on the Nelsons' letter to Equifax dated November 15, 2019, in which the Nelsons indicated that "Nationstar is falsely reporting that this loan is open and past due, with delinquencies starting in May 2019. … The reported delinquencies are false and are the sole result of Nationstar's admitted error in not applying the funds." (Doc. 56-1, Exh. N, PageID.496.) The gravamen of plaintiffs' FCRA claim is that, after receiving notice of the November 15 consumer dispute, Nationstar violated its FCRA obligations by failing to investigate the consumer dispute, failing to review and consider all relevant information, continuing to submit false and derogatory information to Equifax with knowledge of its falsity, failing to delete or block falsely reported credit information about the Nelsons, and failing to respond accurately to plaintiffs' dispute. (Doc. 18, PageID.215-16, ¶ 70.)

In moving for summary judgment on Count III, Nationstar once again focuses on what it contends is a paucity of evidence of damages resulting from the violation. As the Eleventh Circuit has recognized, "In order to recover for a negligent violation [of FCRA], a plaintiff must show actual damages." *Younger v. Experian Information Solutions, Inc.*, 817 Fed.Appx. 862, 869 (11th Cir. June 19, 2020). Plaintiffs correctly respond that emotional distress damages may be a form of actual damages compensable under the FCRA. *See Levine v. World Financial Network Nat'l Bank*, 437 F.3d 1118, 1124 (11th Cir. 2006) ("Several courts have previously recognized the possibility that a claim for actual or compensatory damages under FCRA may include compensation for emotional distress in the absence of physical injury."); *Younger*, 817

---

[9]     Insofar as Nationstar separately seeks summary judgment on the Nelsons' request for statutory damages embedded in Count II for lack of evidence to establish a "pattern or practice" of RESPA violations, the Court agrees with plaintiffs that summary judgment is inappropriate at this time pursuant to Rule 56(d), Fed.R.Civ.P. Specifically, plaintiffs have adequately shown that they require additional discovery to gather evidence in support of that aspect of their claim.

Fed.Appx. at 869 (in FCRA context, "[a]ctual damages may include mental distress, even in the absence of out-of-pocket expenses or physical injury").

Nationstar counters, however, that plaintiffs have made no showing that any such emotional distress damages resulted from the alleged FCRA violation, which is a legal requirement of the claim. *See, e.g., Nagle v. Experian Information Solutions, Inc.*, 297 F.3d 1305, 1307 (11th Cir. 2002) ("failure to produce evidence of damage ***resulting from a FCRA violation*** mandates summary judgment") (emphasis added); 15 U.S.C. § 1681*o*(a)(1) ("Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer [for] … any actual damages sustained by the consumer as a result of the failure."). Nowhere in their summary judgment briefing do plaintiffs apprise the Court of how they contend their alleged emotional distress damages resulted from the alleged FCRA violations in this case. They leave the Court guessing as to both what that causal link might be, and what evidence might support its existence. As such, plaintiffs' showing falls well short of that necessary to avoid summary judgment on Count III.

Plaintiffs would try to preserve Count III by relying on their claim for punitive damages under 15 U.S.C. § 1681*n*, which allows an award of punitive damages in case of a willful violation of the FCRA. According to plaintiffs, "Punitive damages under that section are recoverable even in the absence of actual damages." (Doc. 75, PageID.915.) However, this argument appears irreconcilable with the Supreme Court's articulation of Article III standing principles, pursuant to which mere procedural violations that do not cause concrete harm are not actionable. *See Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1550, 194 L.Ed.2d 635 (2016) ("Robins cannot satisfy the demands of Article III by alleging a bare procedural violation. A violation of one of the FCRA's procedural requirements may result in no harm."). Plaintiffs have not explained how they might overcome *Spokeo* standing defects in the context of their FCRA claim if they have not shown actual damages or concrete harm resulting from the alleged statutory violations. Based on the arguments presented by the parties, then, without judicial supplementation or speculation as to what they could have argued but did not, the Court finds that summary judgment is properly entered in Nationstar's favor as to Count III.

### D.      *Wantonness (Count IV).*

In Count IV of the Amended Complaint, the Nelsons assert a state-law wantonness claim against Nationstar. As pleaded, this cause of action proceeds from the notion that Nationstar

breached certain duties owed to the Nelsons, including (i) a statutory duty under the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.*, to apply loan proceeds in a timely manner to the loan pay-off quotes; (ii) a statutory duty under RESPA to respond properly to the Nelsons' NOE and correct their account; and (iii) a duty of reasonable care not to cause foreseeable harm to the Nelsons.  Plaintiff plead in Count IV that Nationstar breached these duties intentionally, willfully and/or with a reckless or conscious disregard for the Nelsons' rights.

Nationstar's Motion for Summary Judgment as to Count IV is rooted in the premise that "Alabama does not recognize tort-like causes of action arising solely through the mortgage or for negligent or wanton servicing of a mortgage contract."  (Doc. 56, PageID.384.)  There is considerable authority to support this proposition.  *See, e.g., U.S. Bank Nat'l Ass'n v. Shepherd*, 202 So.3d 302, 314-15 (Ala. 2015) (recognizing that "federal courts applying Alabama law have repeatedly rejected attempts to assert wantonness claims based on a lender's actions handling and servicing a mortgage once the mortgage is executed," quoting *James v. Nationstar* in detail, and concluding that *Jones* "has correctly stated Alabama law as it applies to claims that lenders have acted wantonly with regard to servicing and handling mortgages"); *James v. Nationstar Mortg., LLC*, 92 F. Supp.3d 1190, 1198 (S.D. Ala. 2015) ("a veritable avalanche of recent (and apparently unanimous) federal precedent has found that no cause of action for … wanton servicing of a mortgage account exists under Alabama law"); *Rice v. Seterus, Inc.*, 2018 WL 513345, *4 (N.D. Ala. Jan. 23, 2018) ("the court concludes that neither the alleged TILA violations nor the alleged RESPA violations can give rise to a negligence or wantonness action under Alabama law"); *Collins v. BSI Financial Services*, 2016 WL 6776284, *10 (M.D. Ala. Nov. 15, 2016) ("The other allegations amount to claims of negligent and wanton servicing of the mortgage account, which are not torts recognized under Alabama law."); *Shedd v. Wells Fargo Bank, N.A.*, 2016 WL 3264127, *6 (S.D. Ala. June 13, 2016) ("under the reasoning of *James* and *Shepherd* and numerous other like-minded authorities, the Court concludes that the Shedds' wantonness claim against Wells Fargo is not actionable, as a matter of law").

All of the arguments that the Nelsons marshal to the contrary have been very recently considered and rejected by Judge Beaverstock of this District Court after being raised by the Nelsons' counsel of record in another matter styled *Driggers v. Caliber Home Loans, Inc.*, 2020 WL 6063934, *4-8 (S.D. Ala. Oct. 14, 2020).  The Court does not credit the Nelsons' arguments in favor of recognizing an Alabama cause of action in this case for wanton servicing of a

mortgage loan for the same reasons articulated in *Driggers*.[10]  Accordingly, the Court readily concludes based on the *Shepherd / James* line of authorities that Nationstar's Motion for Summary Judgment is properly **granted** as to Count IV.

>    **E.**    ***Alabama Deceptive Trade Practices Act Violations (Count V).***

Count V of the Amended Complaint is a claim against Nationstar alleging violations of the Alabama Deceptive Trade Practices Act, Ala. Code §§ 8-19-1 *et seq*. ("ADTPA").  The Nelsons allege that Nationstar engaged in deceptive acts or practices within the meaning of the ADTPA by failing to apply payments within a reasonable time, imposing default-related charges in the absence of default, imposing charges contrary to the mortgage and note, knowingly reporting false and harmful information about the Nelsons to third parties, and seeking to collect amounts that it knew were not owed.  (Doc. 18, PageID.218-19, ¶ 84.)

Nationstar moves for summary judgment on Count V for multiple reasons.  First, movant states without citations to authority or other amplification that none of the purported violations qualify as "deceptive trade practices" under the ADTPA.  But the deceptive acts or practices outlawed by the statute include "[e]ngaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce."  Ala. Code § 8-19-5(27).  Given the common, ordinary meaning of those terms, it is not apparent why the conduct alleged by the Nelsons in Count V could not rise to the level of a violation of § 8-19-5(27).  Without further elaboration by Nationstar, the Court will not credit this ground for summary judgment.

---

[10]    Alternatively, plaintiffs contend that denial of summary judgment as to Count IV is appropriate because "there is a fact question as to whether, when and to what extent Nationstar became party to the mortgage and/or note."  (Doc. 75, PageID.916.)  In the first place, this argument fails because the Court has already explained, *supra*, that no genuine issues of material fact exist as to whether Nationstar was actually the holder of the loan at any relevant time.  In the second place, even if there were such evidence, it cannot rationally be disputed that the conduct which the Nelsons characterize as wanton was undertaken by Nationstar in its capacity of servicing the mortgage loan, irrespective of any other hats it might have worn with respect to the loan.  And finally, *Shepherd* on its face states that Alabama does not recognize claims "that lenders have acted wantonly with regard to servicing and handling mortgages."  202 So.3d at 315.  Thus, even if plaintiffs were correct that Nationstar was a lender / owner of the loan, as opposed to merely a servicer, this argument would not help them avoid summary judgment as to their wantonness claim under bedrock, well-settled principles of Alabama law as enunciated in *James* and *Shepherd*.

Next, Nationstar contends that Count V must be dismissed because the Nelsons failed to comply with statutory requirements concerning pre-suit notice. On its face, the ADTPA provides that, "At least 15 days prior to the filing of any action under this section, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be communicated to any prospective respondent by placing in the United States mail or otherwise." Ala. Code § 8-19-10(e). Plaintiffs do not dispute that (i) they failed to furnish written notice to Nationstar as contemplated by § 8-19-10(e), or (ii) failure to provide such notice where required is fatal to a subsequent claim under the ADTPA.[11] Instead, they suggest that they were no under obligation to provide written notice because, by the express terms of the statute, "The demand requirements of this subsection shall not apply if the prospective respondent does not maintain a place of business or does not keep assets within the state." Ala. Code § 8-19-10(e).

The exclusion to the ADTPA's demand requirement has no application here. Indeed, Nationstar submits summary judgment evidence that it maintains assets in the State of Alabama and that it did so at all times relevant to these proceedings. (Doc. 56-1, PageID.401, ¶ 33.) In response, plaintiffs say they need discovery to test the veracity of this assertion and to evaluate whether Nationstar's assets in Alabama "are substantial enough to meet the requirements" of the ADTPA. (Doc. 75, PageID.920.) Plaintiffs have not shown that they require additional discovery in order to be able reasonably to address the "assets" issue. After all, as Nationstar points out, its Alabama assets are a matter of public record, and plaintiffs' counsel would be aware of public means of obtaining such information without resort to the discovery process. Besides, plaintiffs identify no authority recognizing a "substantiality" requirement for a

---

[11]     Courts applying § 8-19-10(e) have dismissed ADPTA claims where the plaintiff neglected to comply with the pre-suit demand requirement. *See, e.g., Deerman v. Federal Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1400 (N.D. Ala. 1997) ("The Deermans' failure to reasonably describe the unfair or deceptive practice in a timely letter is fatal to their claim under the Alabama law."); *Givens v. Rent-A-Center, Inc.*, 720 F. Supp. 160, 162 (S.D. Ala. 1988) ("[T]his letter does not serve as a sufficient demand for relief as set out by § 8-19-10(e), in that it fails to reasonably describe the unfair or deceptive trade practice, or the injury suffered. Therefore, Count Two of plaintiff's complaint is due to be, and is hereby DISMISSED."); *Meadows v. HSBC Mortgage Corp.*, 2011 WL 13134199, *6 (N.D. Ala. Sept. 27, 2011) (dismissing ADTPA claim where plaintiffs did not "dispute that they failed to make a written demand for relief under Alabama's DTPA before filing this action").

defendant's in-state assets to satisfy § 8-19-10(e), and the Court declines to create one out of whole cloth.  *See generally Deerman v. Federal Home Mortg. Corp.*, 955 F. Supp. 1393, 1400 n.9 (N.D. Ala. 1997) (asset condition satisfied where respondent owns at least one mortgage on property located in the State of Alabama).  Under the circumstances, the Court finds that plaintiffs have not shown they are unable to present essential facts on this issue without further discovery, and that a Rule 56(d) deferral is therefore inappropriate as to Count V.

Because the ADTPA required plaintiffs to furnish Nationstar with a pre-suit notice, and because plaintiffs failed to do, their statutory claim is properly dismissed as a matter of law. Nationstar's Motion for Summary Judgment is **granted** as to Count V.

F.    ***Defamation (Count VI).***

Count VI of the Amended Complaint is a state-law claim of defamation.  As pleaded, this cause of action is predicated on Nationstar's "publication of the notices announcing the … foreclosure sale, as well as other communications with third parties, … including the false statement that [the Nelsons] were in default of the mortgage."  (Doc. 18, PageID.219, ¶ 87.)  The critical issue on summary judgment as to Count VI is whether the Nelsons may maintain a cause of action for defamation *per se*, or whether the Nelsons' claim is simply for defamation *per quod*.  The distinction is of vital importance here.  After all, a plaintiff bringing a claim for defamation *per se* under Alabama law need not show special damages resulting from the publication; however, a claim of defamation *per quod* is not cognizable in the absence of special damages.  *See, e.g., Butler v. Town of Argo*, 871 So.2d 1, 16 (Ala. 2003) (recognizing that defamation under Alabama law is "either actionable without having to prove special harm (actionable *per se*) or actionable upon allegations and proof of special harm (actionable *per quod*)") (citations omitted); *Anderton v. Gentry*, 577 So.2d 1261, 1264 (Ala. 1991) ("Because the statements amounted only to slander *per quod*, Anderton must plead and prove special damages.").  "Special damages are the material harms that are the intended result or natural consequence of the slanderous statement, … and the general rule is that they are limited to material loss capable of being measured in money …."  *Butler*, 871 So.2d at 18 (citations and internal quotation marks omitted).  The Nelsons have neither pleaded nor presented any evidence of special damages arising from the allegedly defamatory statements by Nationstar. Accordingly, Count VI is viable only if the purportedly defamatory statements are actionable as defamation *per se*.

The narrow legal question presented, then, is whether the defamatory statements the Nelsons ascribe to Nationstar relating to the foreclosure sale and the Nelsons' purported delinquency on their mortgage qualify as defamation *per se* under applicable law.  If they do not, then Count VI is not cognizable as a matter of law because the Nelsons have neither pleaded nor proven special damages.  The Nelsons' defamation claim against Nationstar sounds in libel (as opposed to slander) because it is predicated on allegations of written or printed malicious aspersions of character.  "In cases of libel, if the language used exposes the plaintiff to public ridicule or contempt, though it does not embody an accusation of crime, the law presumes damage to the reputation, and pronounces it actionable *per se*."  *Butler*, 871 So.2d at 16 (citation omitted); *see also Glennon v. Rosenblum*, 325 F. Supp.3d 1255, 1265 (N.D. Ala. 2018) (same). In its summary judgment memoranda, however, Nationstar neither addresses nor applies this legal standard to the facts at issue.  Instead, in its principal summary judgment brief, Nationstar argues only the legal standard for slander *per se*, which has no application here because the subject statements were written (*i.e.*, libel) rather than oral (*i.e.*, slander).  (Doc. 56, PageID.387.) In its reply brief, Nationstar incorrectly attempts to import the legal standard for the Alabama tort of outrage into the libel *per se* context, with no legal basis for doing so.  (Doc. 79, PageID.1006.) Absent any argument or discussion by movant as to why the written statements at issue in Count VI cannot satisfy the "exposes the plaintiff to public ridicule or contempt" legal standard for a written statement to constitute libel *per se*, the Court will not fill in the blanks on Nationstar's behalf.  As briefed, then, Nationstar's Motion for Summary Judgment is **denied** as to Count VI because Nationstar has failed to demonstrate that the statements identified in the Amended Complaint cannot satisfy the proper standard for libel *per se*, so as to be actionable even without special damages.

### G.   *Conversion (Count VII).*

In Count VII of the Amended Complaint, the Nelsons bring an Alabama common-law claim of conversion against defendants.  As pleaded, plaintiffs' theory of liability on Count VII is that "Nationstar and Fannie Mae wrongfully exercised dominion and control of, and/or interfered with, the funds identified as pay-off funds by failing to timely apply those funds to satisfy the mortgage debt."  (Doc. 18, PageID.220, ¶ 92.)

To establish a claim of conversion in Alabama, "one must present proof of a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a

wrongful detention or interference with another's property.  It is well settled that money may be subject to a conversion claim, where there is an obligation to keep that money intact or deliver it." *SouthTrust Bank v. Donely*, 925 So.2d 934, 939 (Ala. 2005) (citations omitted); *see also Synergies3 Tec Services, LLC v. Corvo*, --- So.3d ----, 2020 WL 4913636, *5 (Ala. Aug. 21, 2020) ("To support a claim for conversion, a plaintiff must prove (1) a wrongful taking, (2) an illegal assumption of ownership, (3) an illegal use or misuse of another's property, or (4) a wrongful detention or interference with another's property.") (citations and internal quotation marks omitted).  Simply stated, "[c]onversion requires a wrongful exercise of dominion over property in exclusion or defiance of a plaintiff's rights, where said plaintiff has … the immediate right of possession." *Gardner v. State Farm Mut. Auto. Ins. Co.*, 842 So.2d 1, 7 (Ala.Civ.App. 2002) (quoting *Empiregas, Inc. of Gadsden v. Geary*, 431 So.2d 1258, 1260 (Ala. 1983)).

Nothing about the fact pattern of this case aligns with the required elements of a conversion claim under Alabama law.  The Nelsons voluntarily sent their payoff funds to Nationstar on or about April 24, 2019.  Nationstar returned those funds to the Nelsons shortly thereafter, such that Count VII cannot logically be related to that payoff attempt.  The Nelsons again voluntarily sent their payoff funds to Nationstar on October 24, 2019.  It is undisputed that Nationstar held those funds in a suspense account without applying them to the Nelsons' mortgage (because Nationstar's position was that said funds were insufficient to pay off the loan balance) for approximately four months, at which time it properly applied the funds and returned the overage to the Nelsons.  Significantly, the record is devoid of any evidence or allegation that the Nelsons <u>ever</u> requested, sought or demanded the return of the October 2019 payoff funds, much less that Nationstar either refused to do so or wrongfully applied the funds for some other purpose.  Rather, the subject monies simply sat undisturbed and unburdened in a suspense account until such time as the parties' dispute over the payoff amount was resolved.

Given these uncontroverted facts, no reasonable finder of fact could conclude that Nationstar did anything that might fall within the four enumerated categories of a conversion claim under Alabama law.  Certainly, Nationstar did nothing that could rationally be viewed as a "wrongful taking" of those funds, inasmuch as the Nelsons voluntarily remitted them without demand, coercion or even request by Nationstar.  Nor did Nationstar engage in any conduct that might be construed as "an illegal assumption of ownership" of the funds; indeed, defendant never said or did anything that would support a determination that it claimed ownership of the

Nelsons' payoff funds.  Likewise, this record lends no support to a conversion claim predicated on "an illegal use or misuse of another's property," for the fundamental reason that Nationstar did not use or misuse the Nelsons' funds at all.  Again, it simply parked the money in a suspense account until the disagreement over the proper payoff amount was resolved to the parties' mutual satisfaction.[12]  As for the "wrongful detention or interference with another's property" variant of a conversion claim, once again there is no evidence to support that theory here.  Nationstar did not wrongfully detain the Nelsons' funds because the Nelsons never requested that the money be returned.  Likewise, Nationstar did not "interfere" with the Nelsons' property; rather, it simply held the funds in a suspense account until the parties reached agreement as to the proper payoff amount, then applied such funds to satisfy the loan and refunded the balance to the Nelsons.

In short, the Nelsons' conversion claim is expressly predicated on the notion that Nationstar made "use of the funds for purposes other than satisfying the loan." (Doc. 75, PageID.924.)  On this factual record, no reasonable finder of fact could conclude that Nationstar used the Nelsons' funds for any other purpose.  As such, plaintiffs' conversion claim fails as a matter of law, and Nationstar is entitled to summary judgment on Count VII.

## IV.  Analysis of Fannie Mae's Rule 56 Motion.

In a separate Motion, defendant Fannie Mae seeks dismissal of the Nelsons' claims asserted against it, including Count I (breach of mortgage agreement and note), Count IV (wantonness), Count VI (defamation) and Count VII (conversion).  Plaintiffs persuasively make a Rule 56(d) showing that they are unable without further discovery to litigate the existence and scope of any principal/agent relationship that might exist between Fannie Mae and Nationstar as to the Nelsons' mortgage.  Accordingly, because plaintiffs had not been afforded the benefit of full discovery when this Motion was filed and briefed, the Court will not entertain any summary judgment arguments by Fannie Mae predicated on the notion that no agency relationship existed

---

[12]    In their summary judgment brief, plaintiffs posit that "Nationstar's use of the funds for purposes other than satisfying the loan is conversion." (Doc. 75, PageID.924.)  But they point to no facts and no evidence that Nationstar ever used the funds for any purpose.  They neither identify what that purpose was nor explain how Nationstar used the funds in furtherance of any such purpose.  This deficiency in the proof negates plaintiffs' reliance on Alabama authorities for the proposition that "[w]here the bank held the funds and applied them to satisfy its own loan, it committed conversion." (Doc. 75, PageID.923.)  Here, Nationstar applied the funds to nothing, so plaintiffs' analogy is ill-fitting and unpersuasive.

between the defendants.  Plaintiffs' theory of liability against Fannie Mae is that it "in wholesale fashion, completely delegated to Nationstar all the duties owed to the Nelson[s] under the mortgage and note, … [which] creates vicarious liability."  (Doc. 75, PageID.925.)  The question of delegation is likewise not susceptible to resolution without complete discovery, so the Court will not examine it at this time.

Notwithstanding the foregoing, Fannie Mae contends that entry of summary judgment is warranted because, even if the Nelsons are correct about the issues of agency and delegation, vicarious liability is precluded in this case as a matter of law by application of the *Merrill* doctrine.  So named after a 1947 Supreme Court decision, "[t]he *Merrill* doctrine requires a showing of actual authority as a basis for holding a federal instrumentality vicariously liable for the acts of its agents."  *Faiella v. Federal Nat'l Mortgage Ass'n*, 928 F.3d 141, 143 (1st Cir. 2019); *see also United States v. Killough*, 848 F.2d 1523, 1526 (11th Cir. 1988) ("It is well settled that persons dealing with a governmental agent must take notice of the agent's authority and that any unauthorized acts taken by the agent do not bind the government."); *Coniglio v. Federal Nat'l Mortgage Ass'n*, 2019 WL 9633294, *2 (M.D. Fla. Sept. 16, 2019) ("Based on *Merrill*, courts have since held that persons dealing with a governmental agent must take notice of the agent's authority and that any unauthorized acts taken by the agent do not bind the government.") (citations and internal quotation marks omitted).  Fannie Mae's position is that it is a federal instrumentality, that the Nelsons cannot show that Fannie Mae gave actual authority for Nationstar to act as it did with respect to their mortgage, and that by straightforward application of the *Merrill* doctrine Fannie Mae cannot be held vicariously liable in this case for Nationstar's unauthorized acts.

In contending that the *Merrill* doctrine does not preclude vicarious liability here, the Nelsons advance a series of legal arguments.  First, plaintiffs note that Fannie Mae has been routinely characterized as "fully privately owned" and a "Government-sponsored private corporation."  *See, e.g., Herron v. Fannie Mae*, 861 F.3d 160, 163 (D.C. Cir. 2017) ("Although it originated as a government-owned entity, Fannie Mae became a privately owned, government-sponsored corporation in 1968.").  But numerous courts have determined that, notwithstanding

its privately owned status, Fannie Mae is a federal instrumentality for various purposes.[13]  Of course, an entity may deemed to be a federal instrumentality for some purposes but not others. *See, e.g., Mendrala v. Crown Mortg. Co.*, 955 F.2d 1132, 1139 (7th Cir. 1992) ("Our conclusion that the FHLMC is not a 'federal agency' for purposes of the FTCA does not preclude a determination that it is a federal instrumentality for other purposes, including purposes of estoppel and the *Merrill* doctrine.").

Last year, in *Faiella v. Federal National Mortgage Association*, the First Circuit became the first federal appellate court to tackle the question of whether Fannie Mae is a federal instrumentality for purposes of the *Merrill* doctrine.  In so doing, the panel observed that "our inquiry hinges on whether Congress created Fannie Mae to serve an important governmental objective," and "whether preventing Fannie Mae from being bound by the unauthorized acts of its agents would run at cross-purposes with [congressional] intent."  *Faiella*, 928 F.3d at 148. The First Circuit readily concluded that (i) Fannie Mae "serves an important governmental objective: to maintain the secondary mortgage market and assist in meeting low- and moderate-income housing goals;" and (ii) allowing Fannie Mae to be held liable for its agents' unauthorized acts "would frustrate Congress's intent as expressed in the prescribed nature of Fannie Mae's authority."  *Id.* at 149 (citation and internal quotation marks omitted).  On that basis, the *Faiella* court held "that Fannie Mae is a federal instrumentality for purposes of the *Merrill* doctrine and, thus, cannot be held liable for the unauthorized acts of its agents."  *Id.*  In the 16 months since it was decided, *Faiella* has been followed by multiple federal courts and criticized/rejected by none.  *See Coniglio*, 2019 WL 9633294, at *3 (quoting extensively from

---

[13]        *See, e.g., Rust v. Johnson*, 597 F.2d 174, 178 (9th Cir. 1979) ("We have been unable to find anything in the legislative history or in the statutes governing the operation of FNMA which supports the conclusion that Congress intended to strip FNMA of its status as a federal instrumentality.  A survey of the cases involving the Federal land banks and the Federal home loan banks reveals that they are treated as federal instrumentalities engaged in the performance of governmental functions even though their stock may be privately owned."); *Athens-Clarke County Unified Gov't ex rel. Denson v. Federal Housing Finance Agency*, 945 F. Supp.2d 1401, 1409 (M.D. Ga. 2013) ("Here, Fannie Mae and Freddie Mac are 'federal instrumentalities' as defined by the Supreme Court"); *Hall County, Ga. v. Federal Housing Finance Agency*, 2013 WL 4670612, *3 (N.D. Ga. Aug. 30, 2013) ("Plaintiffs here cannot establish that Fannie Mae and Freddie Mac are not federal instrumentalities because Fannie Mae and Freddie Mac are entities created by Congress through which Congress exercises its powers.").

*Faiella* and finding Fannie Mae to be a federal instrumentality for *Merrill* doctrine purposes); *Denton v. Nationstar Mortgage LLC*, 2020 WL 1917486, *4 (N.D. Okla. Apr. 20, 2020) ("The First Circuit's opinion directly addresses, and rejects, the Dentons' argument that Fannie Mae is not a 'federal instrumentality' for purposes of the *Merrill* doctrine."). The Court finds *Faiella* persuasive and, in the absence of any substantial argument to the contrary by plaintiffs, adopts its determination and reasoning in deeming Fannie Mae a federal instrumentality for *Merrill* doctrine purposes.

Notwithstanding Fannie Mae's instrumentality status, the Nelsons nonetheless argue that the *Merrill* doctrine does not support entry of summary judgment here because the Eleventh Circuit has narrowed the doctrine in three critical respects. First, according to plaintiffs, the Eleventh Circuit has limited application of the *Merrill* doctrine to estoppel claims. (Doc. 75, PageID.925.) But in none of the cases cited by the Nelsons did the parties seek to apply *Merrill* to any claims other than estoppel; certainly, the Eleventh Circuit neither held nor intimated in those decisions that the *Merrill* doctrine is confined to the estoppel context. Plaintiffs identify neither established law nor persuasive policy reasons why the *Merrill* doctrine should be circumscribed in that manner.

Second, plaintiffs suggest that the Eleventh Circuit has carved out an exception to the *Merrill* doctrine in cases of affirmative misconduct by the government's agent. (Doc. 75, PageID.926.) But the Eleventh Circuit opinion cited for this proposition does not set forth anything approaching a determination that such an exception exists, only noting in passing that there is an "open issue" on that point. *Deltona Corp. v. Alexander*, 682 F.2d 888, 891 (11th Cir. 1982). Indeed, *Deltona* specifically noted that "neither the former Fifth nor Eleventh Circuits has addressed the issue." *Id.* at 891 n.4. Moreover, in *Faiella*, the First Circuit examined the "affirmative misconduct exception" to the *Merrill* doctrine and explained, based on its canvassing of pertinent case authorities, that "a finding of affirmative misconduct requires either an affirmative misrepresentation of a material fact **by the government** or some affirmative concealment of such a fact **by the government**." *Faiella*, 928 F.3d at 150 (emphasis added). In other words, the affirmative misconduct exception would apply only in the presence of affirmative misconduct by the instrumentality (*i.e.*, Fannie Mae), not the agent (*i.e.*, Nationstar). Plaintiffs identify neither binding nor persuasive authority holding otherwise. The summary

-23-

judgment record is devoid of evidence (or even allegations) of any affirmative misconduct by Fannie Mae; therefore, this exception to the *Merrill* doctrine has no plausible application here.

Third, the Nelsons posit that the Eleventh Circuit has refused to apply *Merrill* to activities advancing the government's or an individual agency's commercial benefit. (Doc. 75, PageID.926.) However, the only case cited by the Nelsons in support of this proposition expressly distinguished *Merrill* on the grounds that the "FDIC does not claim that the representations of its agents were unauthorized or contrary to statute or regulation. Thus, cases involving representations of government officers that were beyond the scope of their authority are distinguishable. *Cf. Federal Crop Insurance Corporation v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947) …." *Federal Deposit Ins. Corp. v. Harrison*, 735 F.2d 408, 413 (11th Cir. 1984). Moreover, the portion of *Harrison* cited by the Nelsons was discussing whether activities undertaken by the government primarily for the commercial benefit of the government or an individual agency are subject to estoppel. No estoppel claim is asserted here. At any rate, other circuits in cases like *Faiella* and *Mendrala* have plainly applied *Merrill* to fact patterns involving commercial benefit to an agency where the agent's actions are unauthorized or contrary to law. This Court will do the same.

In short, the Court concludes that the *Merrill* doctrine is fatal to the Nelsons' claims against Fannie Mae in this action. Importantly, the Nelsons have identified no wrongdoing by Fannie Mae; rather, their claims against it sound exclusively in the theory that Fannie Mae may be vicariously liable for the actions of its agent, Nationstar. Assuming (without deciding) that a principal/agent relationship existed between Fannie Mae and Nationstar, the Nelsons' vicarious liability theory against Fannie Mae could succeed under the *Merrill* doctrine only if Nationstar's acts were actually authorized. Plaintiffs do not and cannot reasonably argue that Nationstar's alleged misdeeds in servicing the Nelsons' mortgage were actually authorized by Fannie Mae. As such, plaintiffs' vicarious liability theory of liability fails as a matter of law and Fannie Mae's Motion for Summary Judgment is due to be **granted** in its entirety.

## V.    Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1.    Defendant Nationstar Mortgage LLC's Motion for Summary Judgment (doc. 56) is **granted in part**, and **denied in part**;

2.      Nationstar's Motion for Summary Judgment is **granted** as to Count I (breach of mortgage agreement and note), Count III (FCRA), Count IV (wantonness), Count V (Alabama Deceptive Trade Practices Act), and Count VII (conversion), and those claims are **dismissed with prejudice**;

3.      Nationstar's Motion for Summary Judgment is **denied** as to Count II (RESPA) and Count VI (defamation); and

4.      Defendant Federal National Mortgage Association's Motion for Summary Judgment (doc. 59) is **granted** pursuant to the *Merrill* doctrine, and all claims asserted by plaintiffs against that defendant are **dismissed with prejudice**.

DONE and ORDERED this 25th day of November, 2020.


s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE